Case 4:17-cv-03619 Document 29 Filed on 03/11/19 in TXSD Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2019
David J. Bradley, Clerk

FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF CRANE SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:17-CV-03619 |
| BLUE FIN SERVICES, INC>, | § § § | |
| Defendant. | § § § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending in this case which has been referred to the undersigned Magistrate Judge for all further pretrial proceedings is Plaintiff's Motion for Summary Judgment (Document No. 16). Having considered the motion, the response, the arguments made in support of the motion, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment be DENIED.

**Background**

This case involves indemnity claims between two contractors, Plaintiff Gulf Crane Services, Inc. ("Gulf Crane") and Defendant Blue Fin Services, Inc ("Blue Fin"), that performed work on an offshore oil platform. Those indemnity claims are based on Gulf Crane's settlement of a personal injury lawsuit brought by a Blue Fin employee, Cory Mata, and Blue Fin's contractual obligations related thereto.

Freeport-McMoRan Oil & Gas, LLC ("Freeport" or "Company") hired Gulf Crane as a contractor to work on a project to plug and abandon a well. (Document No. 19). Blue Fin (referred to at times as "Contractor") was also working as a contractor for Freeport on the same project by

virtue of an Addendum to a Master Services Contract ("MSC") executed between Freeport and Blue Fin's predecessors. (Document No. 8-2). The Addendum incorporated the terms of the MSC, which included mutual indemnity obligations between the Contractor (Blue Fin) and Company as well as a choice of law provision. (Document No. 8-2, p. 6). The indemnity provision extended to the "Company Group," meaning the "Company, its parent, subsidiary and affiliated companies, and their co-lessees, partners, joint ventures, and co-owners, and contractors of any tier, excluding Contractor hereunder" as well as the "Contractor Group," the "Contractor, its parent or subsidiary and affiliated companies, and Contractor's subcontractors or any tier ... and each of their respected insurers, officers, directors, and employees." *Id.* (emphasis in original). The MSC required each party to obtain $1,000,000 in Commercial General Liability insurance and Umbrella/Excess Liability Insurance to "bring limits to $6,000,000 each for Employers Liability, Comprehensive General Liability and Comprehensive Automobile Liability if the aforementioned coverages are less than $6,000,000 each." (Document No. 8-2, p. 13—14).

The MSC provided that operations performed in Texas or under Texas Law would be in compliance with the Texas Oilfield Anti-Indemnity Act ("TOAIA"), with the parties agreeing "to carry supporting insurance in equal amounts of the types and in the minimum amounts as specified in the insurance requirements hereunder." (Document No. 8-2, p. 7). The choice of law provision in the MSC stated that, except for Section 3 (Performance of Work), the contract was to be governed by General Maritime Law of the United States; if maritime law was inapplicable, the laws of Texas would apply. (Document No. 8-2, p. 10).

On June 12, 2015, a technician for Blue Fin, Corey Mata, had finished his work and was being transferred from a fixed oil production platform[1] to a vessel that would take him to his living

---

[1] The fixed platform, owned by Freeport, is located offshore Texas near High Island. (Document No. 8-1, p. 2).

2

quarters on another platform. (Document No. 19, p. 3). As he was being transferred via personnel basket, the crane operator, employed by Gulf Crane, struck something on the platform, dislodging Mata from the basket. (Document No. 8-1, p. 2—3). Mata was severely injured and filed suit against Freeport, Gulf Crane, and C&D Production Specialist Co., Inc. ("C&D"). (Document 8-1, p. 1). At the time of the incident Blue Fin was providing Freeport with bolting services. (Document No. 19, p. 2).

Per the MSC's indemnity provision, Blue Fin accepted Freeport and C&D's tenders and settled Mata's claim on their behalf. (Document No. 19, p. 3). Gulf Crane also submitted a tender, but Blue Fin questioned the contracts between Blue Fin, Gulf Crane, and Freeport and the effects they would have on the indemnity provision and did not offer a defense or indemnity. Gulf Crane, on its own, reached a settlement with Mata. *Id.* Blue Fin subsequently offered Gulf Crane $500,000 as indemnity, but because Gulf Crane's settlement and related costs far exceeded that amount, it refused to accept the offer and filed this lawsuit. (Document No. 16, p. 16).

Gulf Crane alleges in its Complaint that Blue Fin is obligated to defend and indemnify it with respect to the *Mata* settlement fully and without limit, and its refusal to do so is a breach of the Master Service Contract. Gulf Crane also alleges that Blue Fin had a duty to name it as an additional insured on its insurance, and its failure to do so is another breach of the MSC. Gulf Crane asserts two breach of contract claims, and a related declaratory judgment claim. (Document No. 16, p. 9).

In its Motion for Summary Judgment, Gulf Crane seeks summary judgment on both breach of contract claims and the declaratory judgment claim, arguing that because maritime law applies to the MSC, Blue Fin is required to fully defend and indemnify it with regards to the *Mata* settlement. (Document No.16, p. 11). Gulf Crane alternatively argues that even if maritime law

3

does not apply, and the MSC is governed by TOAIA, Blue Fin is still required "to indemnify Gulf Crane for the *Mata* lawsuit for *at least* $6 million," that $6 million amount being the amount of insurance called for by the MSC. (Document No. 16, p. 16—17) (emphasis added). Blue Fin, in response to the Motion for Summary Judgment, first acknowledges that Gulf Crane falls within the "Company Group" definition in the MSC, thereby giving rise to an indemnity obligation on its part. Blue Fin then argues that its indemnity obligation is limited by TOAIA to what remains of the $6,000,000 in insurance following its settlement of *Mata* on behalf of Freeport and C&D. (Document No. 19, p. 3—4).

The amount of indemnity available to Gulf Crane is dependent upon whether maritime law or Texas law governs this dispute. If maritime law governs, there is no limit on Blue Fin's indemnity obligations. If Texas law governs, TOAIA limits Blue Fin's indemnity obligations to the reciprocal insurance amount ($6 million) set forth in the MSC. It must, therefore, first be decided what law governs.

**Discussion – Maritime Law or Texas Law**

Gulf Crane claims that the MSC is governed by maritime law because the controversy arose in connection with operations on or near an oil production platform located off the coast of Texas on the Outer Continental Shelf. It also points to the MSC's choice of law provision which applies maritime law whenever performance is above navigable waters. (Document No. 16, p. 10). Gulf Crane concludes that because maritime law and the MSC do not impose an indemnity limit, Blue Fin must fully defend and indemnify Gulf Crane. (Document No. 16, p. 11). Blue Fin argues, in response, that Texas law governs because Blue Fin's work did not involve a vessel and the nature of the contract was not maritime. (Document No. 19, p. 4—5). Blue Fin further maintains that

under TOAIA, its indemnity obligation to Gulf Crane is limited to the portion of the $6,000,000 in insurance that remains after indemnifying Freeport and C&D. (Document No. 19, p. 8).

The Outer Continental Shelf Lands Act ("OCSLA") states that federal law is "extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed." 43 U.S.C. § 1333(a)(1). The laws of the adjacent state are adopted as surrogate federal law for the zones that "would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf." 43 U.S.C. § 1333(a)(2)(A). State law will apply as surrogate federal law when three conditions have been met: "(1) the controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." *Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009) (citing *Union Tex. Petroluem Corp.v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)). Fixed platforms are considered installations permanently attached to the seabed. *Grand Isle*, 589 F.3d at 784.

General maritime law will uphold indemnity provisions whereas adjacent state laws may limit or make provisions unenforceable.[2] There is a choice of law provision in the MSC which specifies that it is governed by maritime law, however, even if a choice of law provision may be enforced under state law, under OCSLA it is not, because "OCSLA is itself a Congressionally

---

[2] *See, e.g. Cambell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1126—27 (5th Cir. 1992) (holding that the contract was maritime, so a choice of Texas law provision could be enforced, and therefore the defendant had to indemnify the full amount of the agreement); *Hoda v. Rowan*, 419 F.3d 379, 383 (5th Cir. 2005) (holding that the contract was maritime so the indemnity provision was enforceable under general maritime law). *But see, Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 353 (stating that the TOAIA statutorily limits the indemnity obligation to the amount of insurance that the other party agreed to provide); *Re Larry Doiron Inc. v. Specialty Rental Tools & Supply, LLP*, 879 F.3d 568, 577 (5th Cir. 2018) (holding that the contract was non-maritime and controlled by Louisiana law which bars indemnity).

mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary." *Union Tex. Petroleum Corp.*, 895 F.2d at 1050.[3] Therefore, the MSC's choice of law provision is irrelevant to this analysis.

The Fifth Circuit adopted a two-pronged test in *Doiron* to determine whether a contract is maritime: (1) "was this a contract to provide services to facilitate the drilling or production of oil and gas on navigable waters?"[4]; and (2) if the answer is yes, then "does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?" 879 F.3d at 575—76. The MSC is a blanket contract and the details of Blue Fin's services are outlined in later work orders. The MSC and work orders will be interpreted together when applying the *Doiron* test. *Id.* at 571 (citing *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 315 (5th Cir. 1990)).

The parties agree that Blue Fin was contracted by Freeport for a plug and abandonment project. (Document No. 19, p. 2). It is uncontroverted that Blue Fin was providing bolting services for the project, all of its work took place on the decks of the fixed platform above water, and no vessel was involved in any of Blue Fin's bolting services. (Document No. 19, p. 6). Viewing these undisputed facts in the light most favorable to the non-movant Blue Fin, under the *Doiron* test the

---

[3] *See also Doiron*, 879 F.3d at 571 n.10 ("Our case law makes clear that, if the contract is non-maritime, Louisiana law will govern its construction even in the face of a choice-of-law clause. This is so because enforcement of the choice-of-law clause would violate Louisiana's public policy and directly contravene LOIA." (citing *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 254 (5th Cir. 2001)).
[4] The court created the test based off of the Supreme Court's opinion in *Norfolk Sourthern Railway Co. v. Kirby*, which stated "so long as a bill of lading requires *substantial* carriage of goods by sea, its purpose is to effectuate maritime commerce – and thus it is a maritime contract. *Id.* at 575 (citing *Norfolk S. Ry. v. Kirby*, 543 U.S. 14, 27 (2004))(emphasis in original). The Fifth Circuit applied the *Doiron* test in a later case stating that they were not "concerned about whether the worker was on a platform or vessel. The question is whether this contract concerned the drilling and production of oil and gas on navigable waters from a vessel." *In re Crescent Energy Servs., LLC*, 869 F.3d 350 356—57 (5th Cir. 2018).

contract between Blue Fin and Freeport was non-maritime.[5] Additionally, applying a state's anti-indemnity statute is not inconsistent with federal law. *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1130 (5th Cir. 1986).[6] Therefore, under OCLSA, 43 U.S.C. § 1333(a)(2)(A), Texas law applies.

**Discussion – Gulf Crane's Claims**

Under the Texas Oilfield Anti-Indemnity Act, indemnity provisions are only enforceable under limited circumstances. A mutual indemnity obligation is enforceable with an express contract but is "limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee." TEX. CIV. PRAC. & REM. CODE ANN. § 127.005(b) (West). Blue Fin and Freeport each agreed to an insurance limit of $6,000,000 for the "Company Group" and "Contractor Group" respectively. (Document No. 8-2, p. 13—14).

Gulf Crane's Motion for Summary Judgement seeks a declaration that Blue Fin is obligated "to defend and indemnify Gulf Crane with respect to the *Mata* lawsuit *fully and without limit.*" (Document No. 16, p. 9) (emphasis added). Since it has been determined that Texas law applies, there *is* a limit on Blue Fin's indemnity, and Gulf Crane is therefore not entitled to summary judgment on its declaratory judgment claim.

As for Gulf Crane's breach of contract claims, summary judgment is not available on those claims either. That is because while Blue Fin has admitted that it owes Gulf Crane some amount in indemnity vis-à-vis Gulf Crane's defense and settlement of *Mata* and appears to acknowledge

---

[5] In *Tetra Technologies Inc. v. Continental Ins.*, the court noted that the work order was not in the record, so the court looked elsewhere such as testimony, complaints, and a Salvage Plan to try to determine the nature of the work order. 814 F.3d 733, 741—42 (5th Cir. 2016) (per curiam).

[6] Though the case was based on the Louisiana Oilfield Indemnity Act, the court's reasoning was that the Act was a rational attempt to improve oilfield safety, and therefore not unconstitutional. The case was later cited by *Delahoussaye v. Pisces Energy, L.L.C.*, 2012 WL 1089083, 8 (E.D. La. 2012) ("[T]he application of state law by way of an anti-indemnity statute is not inconsistent with federal law.").

that it should have named Gulf Crane as an additional insured, Gulf Crane has not established, as a matter of law, its damages. According to the limits imposed by the TOAIA, Gulf Crane is entitled to indemnity in an amount that represents whatever remains of the $6,000,000 in insurance Blue Fin obtained pursuant to the MSA. Blue Fin offered Gulf Crane $500,000, but according to the affidavit of David Pugh, President of Blue Fin, "Blue Fin settled the Mata suit on behalf of Freeport-McMoRan and C&D for $4,885,000 in total," (Sealed Document No. 20, p. 2), leaving, presumably, more than $500,000 left in insurance proceeds. But Gulf Crane has not come forth with any summary judgment evidence to show what remains on the $6,000,000 in insurance Blue Fin obtained. Gulf Crane, having not established, as a matter of law, the amount remaining in insurance for purposes of its breach of contract/indemnity claim, is not entitled to summary judgment on that claim.

With respect to Gulf Crane's breach of contract claim premised on Blue Fin's failure to name it as an additional insurance, Texas common law has "long recognized that the contractual duties to indemnify and to maintain insurance may be separate and independent." *In re Deepwater Horizon*, 470 S.W.3d 452, 468 (Tex. 2015). Here, there is no genuine dispute that Blue Fin did not name Gulf Crane as an additional insured, and that Blue Fin should have named Gulf Crane as an additional insured. The MSC states that "[t]he parties agree to obtain and maintain insurance coverage in an amount sufficient to satisfy the requirements set forth on Exhibit "A"," which establishes Blue Fin's duty to provide coverage for the "Company Group". (Document No. 8-2, p. 7). Blue Fin has acknowledged that Gulf Crane falls within the "Company Group" under the MSC. (Document No. 19, p. 3). Blue Fin's Certificate of Liability Insurance only lists "Freeport-McMoran Oil & Gas, LLC and all subsidiaries" as the Certificate Holder. (Document 8-2, p. 20). The Certificate Holder was named as the additional insured for "General Liability, Automobile

8

Liability & Excess Liability as required by written contract." *Id.* at 21. Because "Company Group" includes more than just Freeport and its subsidiaries, Blue Fin breached its obligation to procure additional insured coverage for Gulf Crane, who is a member of the "Company Group" by virtue of being a contractor for Freeport. This uncontroverted evidence of a breach is, however, not enough, on its own, to justify summary judgment for Gulf Crane on this breach of contract claim. That is because Gulf Crane has failed to come forth with summary judgment evidence that establishes, as a matter of law, the damages associated with this breach of contract. Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499-500 (5th Cir. 2018) (citing *Smith Intern., Inc. v. Egle Grp., L.L.C*, 490 F.3d 380, 387 (5th Cir. 2007). Here, there is no summary judgment evidence in the record from which it could be determined, as a matter of law, the damages, if any, sustained by Gulf Crane as a result of Blue Fin's failure to name it as an additional insured. Summary judgment is therefore also not warranted on this breach of contract claim.

**Conclusion and Recommendation**

Blue Fin and Freeport's contract is governed by Texas law, and is therefore subject to limits imposed by the Texas Oilfield Anti-Indemnity Act. Based on that determination, which defeats Gulf Crane's declaratory judgment claim, and the absence of summary judgment evidence that would establish Gulf Crane's damages on its breach of contract claims as a matter of law, the Magistrate Judge

RECOMMENDS that Plaintiff's Motion for Summary Judgment (Document No. 16) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 10th day of March 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE